UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUISA CASTAGNA ESPOSITO,

                         Plaintiff,

         - against -

WILLIE GARY, individually and as a
partner of GARY, WILLIAMS, PARENTI,
WATSON & GARY, P.L.L.C. and
CHISTOPHER CHESTNUT, individually
and as a partner of THE CHESTNUT FIRM,
P.C. and THE CHESTNUT FIRM, LLC,

                         Defendants.

**ORDER**

18 Civ. 11245 (PGG) (OTW)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Luisa Castagna Esposito has sued Defendants Christopher Chestnut and

Willie Gary in their individual capacities and as partners in their respective law firms, Chestnut,

L.L.P. and Gary, Williams, Parenti, Watson & Gary, P.L.L.C.  Chestnut and Gary represented

Esposito in a civil assault and battery case that she had brought against Allen H. Issac and other

lawyers who had represented her in a personal injury automobile accident case in New York

state court.  (Second Am. Cmplt. ("SAC") (Dkt. No. 92) ¶¶ 1-2)

          Esposito claimed that – while representing her in the personal injury case – Isaac

had "repeatedly demanded 'blow jobs' as a condition of his representation."  "When Ms.

Esposito refused, Isaac physically assaulted her, forcibly touched intimate parts of her body, and

repeated his demands for sex."  (Id. ¶ 18)  In August 2015, after seven years of litigation, the

defendants in Esposito v. Isaac were granted summary judgment and Esposito's claims were

dismissed.  (See Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order

(Dkt. No. 92-9))

In the instant case – which Esposito commenced on December 3, 2018 (Dkt. No. 1) – Esposito claims that Defendants Chestnut and Gary committed legal malpractice while representing her in <u>Esposito v. Isaac</u>.

The Second Amended Complaint was filed on April 15, 2022, and asserts claims for legal malpractice and negligent misrepresentation.  (SAC (Dkt. No. 92) ¶¶ 60-106)

Defendant Gary has moved to dismiss under Fed. R. Civ. P. 12(b)(6) arguing, <u>inter</u> <u>alia</u>, that the SAC fails to state a claim.  (Gary Mot. (Dkt. No. 107))

On May 6, 2022, this Court referred Defendant Gary's motion to Magistrate Judge Ona T. Wang for a Report and Recommendation ("R&R").  (Dkt. No. 115)  On February 5, 2024, Judge Wang issued an R&R recommending that the SAC be dismissed as to both Defendants Gary and Chestnut for failure to state a claim.  (2024 R&R (Dkt. No. 272))  Plaintiff Esposito submitted objections to the R&R on February 16, 2024.  (Pltf. Obj. (Dkt. No. 274))  For the reasons stated below, Judge Wang's R&R will be adopted as to Defendant Gary, and the SAC's claims will be dismissed as to Defendant Gary for failure to state a claim.

## <u>BACKGROUND</u>

I.    <u>FACTS</u>

A.    <u>Esposito's Allegations Against Isaac</u>

Esposito retained the law firm of Pollack, Pollack, Isaac & Decicco, LLP to represent her in a lawsuit arising out of injuries that she suffered in a 2002 car accident.

(Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at

3)[1]

> As that case neared trial, a partner at Pollack, Brian Isaac, put Plaintiff in contact
> with his father, Allen H. Isaac ("Isaac"), [a partner at Gladstein & Isaac, LLP,] to
> work as trial counsel.  Id.  While preparing for trial, Plaintiff met with Isaac
> several times in 2005.  Id.  She alleges that Isaac harassed and sexually assaulted
> her during two meetings in his office. (ECF 8 ¶¶ 17-23).  Although Plaintiff made
> multiple reports to law enforcement and regulatory and oversight bodies about
> Isaac's sexual assault and harassment, and filed multiple state and federal lawsuits
> against him and his firm, Isaac was never arrested or criminally prosecuted.  See
> 2020 R&R at 2.

(2024 R&R (Dkt. No. 272) at 2)[2]

**B.  Esposito's First Amended Complaint**[3]

Esposito's First Amended Complaint ("FAC") presents the following factual

account:

On December 26, 2008, Esposito filed a civil "sexual assault and battery" lawsuit

against Isaac in New York County Civil Court.  (FAC (Dkt. No. 8) ¶ 1; Esposito v. Isaac, No.

502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 2)  In her lawsuit,

Esposito named as defendants Isaac, his law firm Gladstein & Isaac, Harvey Gladstein – Isaac's

---

[1]  Page number citations reflect the pagination generated by this District's Electronic Case Files
("ECF") system.  The Court takes judicial notice of prior state court decisions and filings.  See
Johnson v. Pugh, 11 Civ. 385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may
take judicial notice of matters of public record, including pleadings, testimony, and decisions in
prior state court adjudications, on a motion pursuant to Rule 12(b)(6).") (citing Rothman v.
Gregor, 220 F.3d 81, 92 (2d Cir. 2000)).

[2]  See Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y. Civ. Ct. Order (Dkt. No. 92-9) at
1-2 (explaining that "Allen Isaac ('Isaac') and Harvey Gladstein ('Gladstein') were both general
partners in a law firm known as Gladstein and Isaac.").

[3]  The factual summary below is drawn from this Court's May 16, 2020 Order dismissing the
First Amended Complaint.  (May 16, 2020 Dismissal Order (Dkt. No. 61))

partner – and the Pollack firm.  (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 2-3)

Esposito's claims against Isaac were dismissed in 2009 because he was not properly served.  (Id. at 3; Esposito v. Isaac, 68 A.D.3d 483 (1st Dept. 2009) (affirming order dismissing Esposito's claims against Isaac))  At some point not specified in the record, Esposito's claims against the Pollack firm were dismissed because of her failure to respond to discovery demands and to obey discovery-related court orders.  (Id. at 2)

In August 2013, Esposito retained Defendants Gary and Chestnut, and another lawyer – Andrew Maloney – to represent her in the Isaac case.  (FAC (Dkt. No. 8) ¶ 30)  Gary was the lead lawyer, while Chestnut and Maloney served as his "minions."  (Id. ¶ 47)  According to Esposito, Gary displayed "bravado" and made "promises about getting success" in her case. (Id. ¶ 41)  Gary told Esposito that he planned to hold a press conference and to create a video about her case to attract press coverage, and would pressure the remaining defendants to settle. (Id. ¶ 44)  While Gary created a video, he never made it public, and he never held a press conference.  (Id. ¶ 46)  In October 2013, Gary and Chestnut made a $25 million demand on the remaining defendants in Esposito v. Isaac on Esposito's behalf.  (Id. ¶ 56)

In 2013, the remaining defendants in the Isaac case – Gladstein & Isaac and Isaac's partner Gladstein – moved for summary judgment.  (Id. ¶ 49)  According to Esposito – in opposing that motion – Gary and Chestnut "failed to perform ordinary reasonable practice standards," did not find "case law to support their arguments," and failed to "submit crucial evidence in their opposition papers."  (Id. ¶¶ 49-50)

On August 11, 2015, Judge David Cohen of the New York County Civil Court granted defendants' motion for summary judgment, and Esposito's remaining claims in the Isaac

case were dismissed.  (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9))  Judge Cohen concluded that Isaac's alleged misconduct could not be attributed to his law firm Gladstein & Isaac, and that Isaac's partner Gladstein had no duty to supervise Isaac, and therefore could not be held liable for Isaac's misconduct.  (Id. at 4-9)[4]

Esposito says that "[o]ver the summer months and continuing into the Fall of 2015" she "came to the realization that Gary was trying to completely derail and bury her case." (FAC (Dkt. No. 8) ¶ 51)  During this time period, Defendants did not "return[] her phone calls or answer[] her emails."  (Id.)  They "conjur[ed] up all kinds of stories and excuses for a long string of incidents in mishandling her cases," "fabricat[ed] meetings," did not invite Esposito's participation "in staged mediation meetings," and "refus[ed] to actually demand or prepare for a jury trial."  (Id.)  According to Esposito, Defendants' "actions and inactions" amount to "legal malpractice and outright fraud."  (Id.)

On September 23, 2015, Maloney moved to reargue Judge Cohen's summary judgment decision.  (Esposito v. Isaac Mot. Reargue (Dkt. No. 51))  On October 15, 2015, Maloney appeared for a hearing concerning his motion, and "handled himself in a manner that screams for his disbarment."[5]  (FAC (Dkt. No. 8) ¶ 54)

In a December 28, 2015 email, attorney Edward Griffith notified Defendants Gary and Chestnut, and Maloney, that Esposito had retained him to represent her, and asked them to complete a "substitution of counsel" form.  (Pltf. Opp. (Dkt. No. 45) at 5)  In a January 7, 2016

---

[4]  In the FAC, and without explanation, Esposito asserts that Gary and Chestnut "settled" the Isaac case "without her knowledge or permission."  (FAC (Dkt. No. 8) ¶ 55)  As discussed above, there was no settlement:  Esposito's claims were dismissed against certain defendants, and Judge Cohen granted the remaining defendants summary judgment.  (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9))
[5]  While the FAC is not clear as to the nature of this hearing, the SAC makes clear that it concerned Maloney's motion to reargue.  (SAC (Dkt. No. 92) ¶ 48)

email to Judge Cohen's law secretary, Maloney submitted copies of the motion to reargue papers and "a Consent to Change Attorney Form executed by . . . Esposito with the name and address of her new attorneys." (Id. at 6; Pltf. Opp. to Def. Obj. (Dkt. No. 57) at 3) Maloney copied Gary and Chestnut on his email. (Pltf. Opp. (Dkt. No. 45) at 6)

Based on the facts set forth above, the FAC asserted the following causes of action:

> Count One . . . alleges breach of contract because Defendants allegedly did not provide her with "proper legal representation"; Count Two alleges in conclusory terms that Defendants breached their fiduciary duties of good faith, loyalty, and due care; Count Three alleges negligence; Count Four alleges legal malpractice and makes unspecific and general allegations that Defendants denied Plaintiff her constitutional rights; Count Five alleges that Defendants were dishonest and incompetent because they falsely informed Plaintiff that Isaac had been dismissed from the [Isaac case]; and Count Six alleges "grand larceny conspiracy to defraud [Plaintiff]".

(2020 R&R (Dkt. No. 49) at 15)

### C. Dismissal of the First Amended Complaint

Defendants moved to dismiss the FAC arguing, inter alia, that Plaintiff's claims were time-barred and that the FAC failed to state a claim. In an April 20, 2020 R&R, Judge Wang recommended that Defendants' motion to dismiss be granted, and that Plaintiff be given leave to amend. (2020 R&R (Dkt. No. 49))

Judge Wang rejected Defendants' argument that Plaintiff's claims should be dismissed as time-barred, finding that "there appear[ed] to be a factual dispute" as to whether the "continuous representation doctrine" applied. (Id. at 11-15)

Judge Wang found, however, that Counts One, Two, and Three of the Amended Complaint "amount to allegations of malpractice by Defendants," and should be dismissed as duplicative of the legal malpractice claim in Count Four. (Id. at 16) As to Count Four, Judge Wang found that the "[A]mended [C]omplaint fail[ed] to plead facts demonstrating malpractice,

6

proximate cause, or damages," and recommended that Defendants' motion to dismiss Count Four be granted.  (Id. at 17-21)  Finally, Judge Wang concluded that Counts Five and Six – which "sound in fraud" (id. at 16, 22) – should be dismissed because Esposito had not pled fraud with particularity, as required by Fed. R. Civ. P. 9(b).  (Id. at 22-23)

Judge Wang further recommended that Esposito be given "one last chance at amendment," given her pro se status.  (Id. at 2)

In a May 16, 2020 order, this Court adopted the R&R in part.  (May 16, 2020 Dismissal Order (Dkt. No. 61))  This Court concluded that all six counts in the FAC "sound in legal malpractice," that the continuous representation doctrine did not apply, and that all of Plaintiff's claims were time-barred under the applicable three-year statute of limitations.  (Id. at 19-24)  This Court further concluded that even if Plaintiff's legal malpractice claims had been timely, "Judge Wang did not err in concluding that Esposito fails to state a claim for legal malpractice."  (Id. at 24)  Because Esposito's claims were time-barred, this Court concluded that "granting leave to amend would be futile."  (Id. at 25)

Esposito appealed, and in an April 20, 2021 summary order the Second Circuit reversed, stating that it "disagree[d] with the district court's application of the statute of limitations to the allegations of the complaint."  Esposito v. Gary, 844 F. App'x 448, 450 (2d Cir. 2021).  Noting that Esposito had filed her action on December 3, 2018, the Second Circuit stated that "[t]he record is devoid of any indication . . . that Esposito [had] communicated a loss of trust and confidence to her attorneys before December 28, 2015, when she sent a letter terminating their engagement."  Id. at 449.  The court further noted that "[i]f the statute is tolled past December 3, 2015" – three years before the instant action was brought – "then Esposito's claims are not time-barred."  Id. at 450.  The Second Circuit "remand[ed] to allow consideration

of whether Esposito's proposed Second Amended Complaint states valid legal malpractice claims such that leave to amend should be granted." Id.

Following the remand, on June 11, 2021, Esposito moved for leave to amend. (Mot. Amend (Dkt. No. 80)) Judge Wang granted that motion on March 31, 2022. (Leave to Amend Order (Dkt. No. 91))

### D.    Second Amended Complaint[6]

The SAC was filed on April 15, 2022. (SAC (Dkt. No. 92))

Judge Wang summarizes the SAC's factual allegations as follows:

> The SAC . . . raises generally the same claims [as those asserted in the FAC]. It describes [however,] for the first time, allegations that Defendants rejected a $750,000 settlement offer at the October 2014 JAMS mediation "without consulting" Plaintiff and otherwise prevented Plaintiff from speaking at the mediation, and [contains] allegations that Defendants committed malpractice by losing at summary judgment. (SAC ¶ 8). Apparently to support "but for" causation for Plaintiff's legal malpractice claims, Plaintiff attaches 16 exhibits, including the parties' summary judgment briefing in the 2008 Tort Case and various complaints against Defendants Gary and Chestnut concerning their conduct in other, unrelated cases. (ECF 92-1-16).

> In support of Plaintiff's assertion that the complaint [in the instant case] was timely, Plaintiff attaches, for the first time, a copy of an email from Plaintiff to Defendants dated December 28, 2015, in which Plaintiff apparently terminated the Defendants. (See ECF 92-11, Exhibit K). In her prior filings, Plaintiff had only provided an email in which she had agreed to retain Griffith and other

---

[6] The facts set forth below are drawn from the SAC and are presumed true for purposes of resolving Defendant's motion to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

The parties have not objected to Judge Wang's summary of the SAC's factual allegations, and this Court adopts it in full. See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 16 Civ. 4425 (VEC) (SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts [the magistrate judge's factual account] in full.").

correspondence with him to suggest that since Defendants had never terminated her, the attorney-client relationship continued until she had retained Griffith.

(2024 R&R (Dkt. No. 272) at 4-5)

As Judge Wang notes, Plaintiff Esposito's new allegations in the SAC are that Defendants (1) unilaterally rejected a settlement offer at the October 2014 mediation, which forms the basis for Counts One and Seven of the SAC; and (2) made a series of incorrect decisions in opposing defendants' motion for summary judgment in Esposito v. Isaac, which forms the basis for Counts Two through Six of the SAC.

According to the SAC, "a mediation was scheduled for October 28, 2014" in Esposito v. Isaac. (SAC (Dkt. No. 92) ¶ 27) During the mediation, the mediator "announced that the insurer had offered $750,000 but it would not consider settlement at any higher amount. Without consulting Ms. Esposito, Gary rejected the offer, increased Ms. Esposito's demand back to $25 million, and concluded the mediation." (Id. ¶ 30) Defendants "told Ms. Esposito that the $750,000 offer was a 'joke' because Ms. Esposito would recover millions of dollars, either from a settlement shortly before trial or from an even higher jury verdict after trial." (Id. ¶ 31) "Ms. Esposito was concerned about the rejection of the $750,000 settlement but she didn't express those concerns to Gary and Chestnut." (Id. ¶ 32) Based on Defendants' "[u]nilateral rejection of [the] $750,000 settlement offer," Esposito asserts claims for legal malpractice and negligent misrepresentation. (Id. at 20, 27)

As for Defendants' performance in opposing the remaining Isaac defendants' motion for summary judgment, the SAC alleges that the Isaac defendants filed their motion on May 30, 2014. (Id. ¶ 34) Gladstein & Isaac and Isaac's partner Gladstein argued that "[u]nder New York law, a partnership and individual non-wrongdoing partners may only be liable for the wrongful acts of [a] partner[] if the acts were committed (1) within the ordinary course of the

partnership's business or (2) with the authority of the copartners, i.e. the partnership authorized the acts."  (Id. ¶ 35)

> According to the SAC, the Isaac defendants' motion had no merit, because

> a rogue partner's wrongful acts constitute gender or race discrimination prohibited under New York State and City Human Rights statutes.  These laws prohibit businesses that are "public accommodations," including businesses organized as partnerships, from discriminating against their customers or clients based on gender and other prohibited classifications.  See, e.g., N.Y. Executive Law, § 296(2)(a); NYC Admin. Code § 8-107(4)(a).  Thus, the partnership and Gladstein, as its managing partner, had a duty to protect their clients from sexual assault and other forms of sexual discrimination by partners  . . . . In addition, Gladstein's duty to protect Ms. Esposito from Isaac's sexual harassment and assault arose from two other independent sources.  First, Gladstein testified that he was the firm's managing partner with supervisory authority over Isaac.  Second[,] evidence indicated that Gladstein was aware that Isaac was a sexual predator.

(Id. ¶ 36-37)

> According to the SAC, "Gary and Chestnut did [not] oppose the [Isaac] [d]efendants' motion for summary judgment with any of these effective defenses."  (Id. ¶ 38) And "[o]n August 11, 2015, Judge Cohen issued his decision granting the motion for summary judgment and dismissing Ms. Esposito's claims against the [remaining Isaac] [d]efendants."  (Id. ¶ 46)  Although a motion to reargue was filed, Gary and Chestnut merely "rehashe[d] prior arguments, which Judge Cohen properly rejected."  (Id. ¶ 48)  On January 11, 2016, Judge Cohen denied the motion to reargue.  (Id.)

> In sum, the SAC alleges that – in opposing the Isaac defendants' summary judgment motion – Defendants committed legal malpractice by (1) "fail[ing] to raise the New York State and City Human Rights Laws"; (2) "fail[ing] to submit evidence that Gladstein was managing partner"; (3) "fail[ing] to submit evidence that Gladstein knew that Isaac was a sexual predator"; (4) filing a "frivolous opposition to the motion for summary judgment"; and (5) "fail[ing] to file a meritorious motion to reargue."  (Id. at 20-26)

**E.    Gary's Motion to Dismiss the Second Amended Complaint and the Attorney Withdrawal Motions**

On April 29, 2022, Defendant Gary moved to dismiss the SAC under Fed. R. Civ. P. 12(b)(6).  (Gary Mot. (Dkt. No. 108))  Defendant Gary argues that the SAC should be dismissed because (1) it fails to state a claim; (2) the SAC's claims are "clearly contradicted by documentary evidence" (Gary Br. (Dkt. No. 108) at 19); (3) the SAC "'raises a new legal theory that would require the gathering and analysis of facts not already considered by the Defendant'" and therefore causes undue prejudice (id. at 30 (quoting Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006)); and (4) the claims are time-barred.  (See id.)

On May 6, 2022, this Court referred Defendant Gary's motion to Judge Wang for an R&R.  (Dkt. No. 115)

On November 14, 2022, Esposito's attorneys moved to withdraw.  (Pltf. Atty. Mot. (Dkt. No. 142))  Judge Wang granted that motion on January 18, 2023.  (Order (Dkt. No. 153))  Esposito entered a pro se appearance on January 19, 2023.  (Dkt. No. 155)

On February 3, 2023, Defendant Chestnut's attorneys moved to withdraw.  (Def. Chestnut Atty. Mot. (Dkt. No. 160))  Judge Wang directed Chestnut to respond to the withdrawal motion.  (Dkt. No. 163)  Defendant Chestnut entered a pro se appearance on March 5, 2023. (Dkt. No. 164)  On April 13, 2023, Defendant Chestnut filed an Answer to the SAC.  (Chestnut Answer (Dkt. No. 167))

**F.    The Magistrate Judge's R&R**

Defendant Gary argues that the SAC should be dismissed for failure to state a claim.  (Gary Br. (Dkt. No. 108))  In a February 5, 2024 R&R, Judge Wang recommends that the SAC be dismissed as to both Defendant Gary and Defendant Chestnut for failure to state a claim. (2024 R&R (Dkt. No. 272))

As to Counts One through Six of the SAC — which allege legal malpractice — Judge Wang explains that a plaintiff asserting such a claim under New York law must allege: "'(1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client.'" (Id. at 8 (quoting Bryant v. Silverman, 284 F.Supp.3d 458, 470 (S.D.N.Y. 2018)). Judge Wang notes that "[t]he specific instances of alleged malpractice now arise from two events: (1) the JAMS mediation, and (2) the loss at summary judgment." (2024 R&R (Dkt. No. 272) at 9)

For Count One — legal malpractice arising out of the JAMS mediation session — Judge Wang notes that, "[a]ccording to Plaintiff's version of events in the SAC, Plaintiff knew at the mediation that a settlement offer had been made, and that Defendants had explained why they had rejected it." (Id. at 11 (citing SAC (Dkt. No. 92) ¶¶ 30-32) (emphasis in original)) "Defendants did not 'fail to communicate' a $750,000 settlement offer (if one was actually made); rather, Plaintiff 'acquiesced' in the decision or accepted their advice not to take it, and now, seeks to find them liable for pressuring her to ratify their rejection of the offer." (Id. at 11-12) Judge Wang notes that "lawyers 'are not guarantors of a favorable outcome in litigation,' and their reasonable strategic decisions made in the course of representing a client do not amount to malpractice." (Id. at 10 (quoting Iannazzo v. Day Pitney LLP, 04 Civ. 7413 (DC), 2007 WL 2020052, at *6 (S.D.N.Y. July 10, 2007)) As such, Esposito's claims regarding Defendants' conduct at the mediation "cannot support a claim for malpractice, as it falls squarely in the province of reasonable strategic decisions," and even if "a lawyer or their client may have misjudged their chances on a dispositive motion or at settlement[, such a miscalculation] cannot give rise to a claim of legal malpractice in hindsight." (Id. at 12)

For Counts Two through Six – which allege legal malpractice arising out of Plaintiff's loss at summary judgment – Judge Wang finds that Esposito "still fails to plead 'but for' causation and actual damages." (Id.) As Judge Wang explains, "'[t]o plead the element of proximate cause, a plaintiff must allege that but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages.'" (Id. at 12 (quoting Bryant v. Silverman, 284 F. Supp. 3d 458, 474 (S.D.N.Y. 2018)) Here, "Plaintiff . . . asserts that the Defendants committed legal malpractice in 'fail[ing] to raise New York State and City Human Rights Laws as a basis [for] holding [Gladstein & Isaac LLP and Gladstein] liable for Isaac's sexual assault.'" (Id. at 13 (quoting Pltf. Opp. (Dkt. No. 119) at 18))

Judge Wang concludes that "Plaintiff's claim is too speculative and conclusory to plead 'but for' causation and damages: there are no facts pleaded in the SAC to support a reasonable inference that Justice Cohen would have considered an unpleaded claim at summary judgment and ruled differently, or even that he was unaware of the provisions of the Human Rights Laws that applied to clients of law firms, or that a motion to amend to add this claim in 2013, when Defendants began their representation, would not have been denied as untimely." (Id. at 15 (emphasis in original)) And "given that Plaintiff's state court complaint did not contain a claim under the Human Rights Laws at the time Defendants began their representation [of Plaintiff], Defendants' strategy not to rely on an unpleaded claim at summary judgment 'does not fall below "that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community."'" (Id. at 15 (quoting Iannazzo, 2007 WL 2020052, at *10))

Having concluded that the SAC "fails to plead facts demonstrating malpractice, proximate cause, or damages," Judge Wang "recommend[s] that" this Court grant "Defendants' motions to dismiss all of Plaintiff's legal malpractice claims, Counts One through Six." (Id.)

As to Count Seven of the SAC – which alleges negligent misrepresentation – Judge Wang concludes that this claim should also be dismissed for failure to state a claim.  (Id. at 16)

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).  "[T]he alleged misrepresentation must be factual in nature[, however,] and not promissory or relating to future events that might never come to fruition."  Id. at 20-21 (collecting cases).

Judge Wang finds that "Plaintiff's complained-of 'misrepresentation' relates to Defendants' assertions [at the mediation] that Plaintiff would not lose the pending summary judgment motion or that she would likely recover more at a later settlement or at trial."  (2024 R&R (Dkt. No. 272) at 16)  Because "[t]hese statements relate to future events and cannot be the basis of a negligent misrepresentation claim," Judge Wang recommends that Plaintiff's negligent misrepresentation claim also be dismissed.  (Id.)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "'The district judge evaluating a magistrate

judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" where, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

    Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts will] review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citations omitted); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

For portions of the R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

"Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." Tavares v. City of New York, 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted). "The submission of new evidence following [a magistrate judge's R&R] is merited only in rare cases, where the party objecting . . . has offered a most compelling reason for the late production of such evidence, or a compelling justification for [the] failure to present such evidence to the magistrate judge." Fischer v. Forrest, 286 F. Supp. 3d 590, 603 (S.D.N.Y. 2018), aff'd, 968 F.3d 216 (2d Cir. 2020) (quotation marks and citations omitted). Similarly, courts do not consider "'new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

### B.     **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

## II. PLAINTIFF'S OBJECTIONS TO THE R&R

In objecting to the R&R, Esposito contends that Judge Wang erred in (1) stating that Plaintiff's claims may be time-barred (Pltf. Obj. (Dkt. No. 274) at 4-8); and (2) recommending dismissal of the SAC despite previously granting Plaintiff leave to file the SAC. (Id. at 8-17)[7]

The Court addresses each of these objections below.

---

[7] Esposito also objects to certain of Judge Wang's discovery rulings. (See, e.g., Pltf. Obj. (Dkt. No. 274) at 13 ("Plaintiff objects specifically as Magistrate Wang repeatedly failed to [o]rder the disclosure of Plaintiff's full files from former counsel in accordance with NY State law and Disciplinary code and such materials are likely to yield further information and evidence to support an additional amendment of the complaint.")) Plaintiff's objections regarding Judge Wang's discovery rulings have no bearing on whether the SAC pleads a claim.

### III.    ANALYSIS

#### A.    Statute of Limitations

Plaintiff Esposito objects to Judge Wang's statement that "Plaintiff's claims may be time barred." (See Pltf. Obj. (Dkt. No. 274) at 4-8; 2024 R&R (Dkt. No. 272) at 7))  But Judge Wang made no finding that Plaintiff's claims were time-barred, and her recommendation that the SAC be dismissed turns on her determination that the SAC fails to state a claim. Accordingly, Plaintiff's objection is overruled, and this Court will go on to consider Judge Wang's recommendation that the SAC be dismissed for failure to state a claim.

#### B.    Failure to State a Claim

In objecting to Judge Wang's recommendation that the SAC be dismissed for failure to state a claim, Esposito relies almost exclusively on the "law of the case" doctrine.  (See Pltf. Obj. (Dkt. No. 274) 8-17)  Esposito points out that Judge Wang granted her leave to file the SAC, and she argues that "no cogent or compelling reasons were identified in the R&R . . . to deviate from the law of the case." (Id. at 10)  Because (1) a motion for leave to amend is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss; and (2) Judge Wang previously found that the SAC "pleads particular facts that, if true, state a claim to relief plausible on its face" (Leave to Amend Order (Dkt. No. 91) at 3), this Court is bound by that determination under the "law of the case doctrine."  (Id. at 8-16)

> "The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001); accord Novick v. AXA Network, LLC, 714 Fed. App'x 22, 25 (2d Cir. 2017).  "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." Aramony, 254 F.3d at 410; accord In re Terrestar Corp., 16 Civ. 1421, 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017).  "Although not binding, the doctrine 'counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent manifest injustice.'" Starbucks Corp. v. Wolfe's Borough
Coffee, Inc., 736 F.3d 198, 208 (2d Cir. 2013) (quoting Ali v. Mukasey, 529 F.3d
478, 490 (2d Cir. 2008)); accord Reches v. Morgan Stanley & Co. LLC, 736 Fed.
App'x 306, 307 (2d Cir. 2018) (summary order).  "The doctrine is properly
applied only when the parties had a full and fair opportunity to litigate the initial
determination." Hamlen v. Gateway Energy Servs. Corp., No. 16 Civ. 3526, 2018
WL 1568761, at *1 (S.D.N.Y. Mar. 29, 2018) (citing Westerbeke Corp. v.
Daihatsu Motor Co., 304 F.3d 200, 219 (2d Cir. 2002)).  The law of the case
doctrine is "driven by considerations of fairness to the parties, judicial economy,
and the societal interest in finality." United States v. Carr, 557 F.3d 93, 102 (2d
Cir. 2009); accord Tomasino v. Estee Lauder Companies, Inc., No. 13 Civ. 4692,
2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015).

Chan Ah Wah v. HSBC N. Am. Holdings Inc., 15 Civ. 8974 (LGS), 2019 WL 859042, at *4

(S.D.N.Y. Feb. 22, 2019).

The Second Circuit has emphasized that "[a]pplication of the law of the case

doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior

to final judgment." Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001)

(quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 165 n. 5 (2d Cir. 2000)).  Moreover,

"[t]he law of the case doctrine allows departure from a prior decision if a court is convinced that

it was incorrect." Pinyuk v. CBE Grp., Inc., 561 F. Supp. 3d 334, 339 (E.D.N.Y. 2021).[8]

Given the Second Circuit authority cited above, this Court concludes that Judge

Wang's decision granting Plaintiff leave to file the SAC does not prevent this Court from

considering whether the SAC states a claim.  Accordingly, the Court considers below whether

the SAC adequately pleads claims for legal malpractice and negligent misrepresentation.

---

[8] Here, of course, this Court has not previously ruled on the sufficiency of the SAC.  Judge
Wang granted Esposito leave to file the SAC on March 31, 2022.  (Leave to Amend Order (Dkt.
No. 91))  On April 27, 2022, Defendant Gary filed an objection – styled as a "motion to vacate."
(Gary Mot. (Dkt. No. 94))  Judge Wang denied that motion on April 29, 2022 as untimely.  (Dkt.
No. 106)  Defendant Gary did not seek review of Judge Wang's order granting leave to amend or
her order denying his motion to vacate.

1.    **Legal Malpractice**

Counts One through Six of the SAC allege legal malpractice arising out of (1) Defendants' rejection of a settlement offer at a mediation; and (2) Defendants' conduct in opposing a motion for summary judgment in Esposito v. Isaac.

"In the context of a legal malpractice claim based on an underlying litigation, '[a] plaintiff's burden of proof in a legal malpractice action is a heavy one. The plaintiff must prove first the hypothetical outcome of the underlying litigation and, then, the attorney's liability for malpractice in connection with that litigation.'" Toussie v. Williams & Connolly, LLP, 20 Civ. 5921 (DG) (TAM), 2023 WL 5152509, at *6 (E.D.N.Y. July 26, 2023) (quoting Lindenman v. Kreitzer, 7 A.D.3d 30, 34 (1st Dept. 2004)).

> Similarly, to establish a legal malpractice claim based on "the negligent giving of advice," at least one New York court has observed that a plaintiff must establish that the alleged deficient advice caused a different, worse outcome, by showing that "(1) within the context of an attorney-client relationship, (2) the attorney negligently (3) gave improper advice, (4) which was a proximate cause of the client's doing of things he would not otherwise have done, (5) resulting in harm and damage to the client."

Id. (quoting Marks Polarized Corp. v. Solinger & Gordon, 124 Misc. 2d 266, 267 (Queens Cnty. Sup. Ct. 1984)).

To establish attorney negligence, "a court must find sufficient evidence that the defendant-attorney's conduct 'fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession.'" Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (quoting Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

"To establish the elements of proximate cause and actual damages for a claim of legal malpractice, the plaintiff must show that 'but for the attorney's negligence, what would

have been a favorable outcome was an unfavorable outcome.'" Id. (quoting Zarin v. Reid &

Priest, 184 A.D.2d 385, 387 (1st Dept. 1992)).

        "If the pleadings and evidence indicate no more than an 'error of judgment' or a

'selection of one among several reasonable courses of action,' dismissal of the claims is

warranted." Id. (quoting Rosner v. Paley, 65 N.Y.2d 736, 738 (1985)).  "Allegations that amount

to nothing more than a 'dissatisfaction with strategic choices' will not support a malpractice

claim as a matter of law." Id. (quoting Bernstein v. Oppenheim & Co., 160 A.D.2d 428, 431 (1st

Dept. 1990)).  And "'[s]peculative contentions about what might have happened had the

defendant attorney . . . taken a different approach in litigating a case on behalf of the plaintiff

[are] not sufficient to support the plaintiff's allegations of legal malpractice.'" Terracciano v.

McGarrity, 16 Civ. 1324 (LAP), 2017 WL 2297013, at *5 (S.D.N.Y. May 24, 2017) (quoting

Citidress II Corp. v. Toyaker, 105 A.D.3d 798 (2d Dept. 2013)).

### a.    Rejection of Settlement Offer

        Count One of the SAC alleges that Defendants Gary and Chestnut committed

legal malpractice "by unilaterally rejecting the $750,000 settlement offer made at the October 28,

2014 mediation without consulting Ms. Esposito."  (SAC (Dkt. No. 92) ¶ 68)  The SAC alleges

that, at the mediation, the remaining Isaac defendants extended a $750,000 settlement offer,

which Defendants Gary and Chestnut rejected as a "joke," "[w]ithout consulting Ms. Esposito,"

despite being warned that the remaining Isaac defendants "would not consider settlement at any

higher amount."  (Id. ¶ 31)  The SAC further alleges that Defendants told Esposito that she

"would recover millions of dollars, either from a settlement shortly before trial or from an even

higher jury verdict after trial."  (Id.)  Defendants also "negligently assured [Esposito] after the

mediation that the motion for summary judgment would be denied and at trial . . . a jury would

award at least $25 million."  (Id. ¶ 8)  While Esposito "was concerned about the rejection of the

$750,000 settlement[,] . . . she didn't express those concerns to [Defendants] Gary and Chestnut." (Id. ¶ 32) "[H]er concerns . . . were outweighed by the trust she placed in [Defendants] Gary and Chestnut and their representations that she would soon recover millions of dollars." (Id. ¶ 33)

Defendant Gary contends that the SAC's claims regarding the settlement offer "are conclusively refuted by the reliable documentary evidence submitted . . . that establishes, as a matter of law, that no offer of $750,000.00 was made at the Mediation nor at any time during the pendency of the underlying action." (Gary Br. (Dkt. No. 108) at 20-21)

In her R&R, Judge Wang states that while she "tends to agree" that "it is not plausible to infer that [the mediation] events happened as Plaintiff now alleges, given the complete absence of any mention of a $750,000 settlement offer in the original complaint, the FAC, the allegedly contemporaneous email terminating Defendants in December 2015, or any of the other documents filed during the appeal," she would not rely on that finding to recommend dismissal of Esposito's claims. (2024 R&R (Dkt. No. 272) at 11 n.9) Instead, Judge Wang concludes that

> [e]ven assuming that a $750,000 offer was made and rejected by Defendants at the JAMS mediation, Plaintiff has failed to state a claim for legal malpractice arising from the mediation. According to Plaintiff's version of events in the SAC, Plaintiff knew at the mediation that a settlement offer had been made, and that Defendants had explained why they had rejected it. (SAC ¶¶ 30-32; see also ECF 109-6 at 4-5). Defendants did not "fail to communicate" a $750,000 settlement offer (if one was actually made); rather, Plaintiff "acquiesced" in the decision or accepted their advice not to take it, and now, seeks to find them liable for pressuring her to ratify their rejection of the offer. At best, then, Plaintiff's claim is that she followed advice of her counsel at the mediation that she later came to regret, or that turned out to be incorrect. This cannot support a claim for malpractice, as it falls squarely in the province of reasonable strategic decisions. Lawyers and parties often take positions in settlement that do not align squarely with the merits. Lawyers often lean on their clients in settlement and during a litigation; ultimately, if the client and the lawyer cannot agree on a course of action, the lawyer can withdraw or the client can fire their lawyer. Often, lawyers

and their clients believe too strongly in their own chances of success or cannot see weaknesses in their case. That a lawyer or their client may have misjudged their chances on a dispositive motion or at settlement cannot give rise to a claim of legal malpractice in hindsight.

(Id. (footnotes omitted))

"When presented with offers of settlement, clients customarily look to their attorneys for advice. . . . Ultimately, though, the decision of whether to accept a settlement offer is one for the client." Ayala v. Fischman, 97 Civ. 6698 (LMM), 2001 WL 1491292, at *4 (S.D.N.Y. Nov. 26, 2001). Here, while Esposito contends that Defendants unilaterally rejected the settlement offer, she acknowledges that she was aware of the offer. Indeed, she states that she had concerns about rejecting the offer, but never expressed those concerns to Defendants.

(SAC (Dkt. No. 92) ¶¶ 32-33) The SAC's allegations thus demonstrate that Esposito acquiesced in Defendants' rejection of the offer. She now regrets accepting their advice, saying that "[b]ut for the incorrect information imparted by Gary and Chestnut, [she] would have accepted the $750,000 offer." (Id. ¶ 104) But as the cases cited above demonstrate, and for the reasons explained by Judge Wang, strategic decisions of this sort do not provide a basis for a legal malpractice claim.

As to the reasonableness of rejecting the alleged $750,000 settlement offer, Esposito repeatedly asserts  in the SAC  that if "the case would have proceeded to trial[,] . . . [she] would have obtained a judgment of at least $25 million." (SAC (Dkt. No. 92) ¶ 74; see also id. ¶¶ 79, 84, 89) Given these allegations, Esposito has not plausibly alleged that Defendants gave "improper advice" when they told her that she could obtain much more than $750,000 if she proceeded to trial. Toussie, 2023 WL 5152509, at *6 (quoting Marks Polarized Corp., 124 Misc. 2d at 267).

As to Esposito's claim that Defendants gave her poor advice in predicting that her claims against the remaining <u>Isaac</u> defendants would survive summary judgment, the SAC's allegations "indicate no more than an 'error of judgment' or a 'selection of one among several reasonable courses of action'" by Defendants, which means that "dismissal of [Esposito's legal malpractice] claims is warranted." <u>Stonewell Corp.</u>, 678 F. Supp. 2d at 209 (quoting <u>Rosner</u>, 65 N.Y.2d at 738))  While the SAC expresses "dissatisfaction with [Defendants'] strategic choices" (<u>see id.)</u>, such dissatisfaction does not provide a basis for a legal malpractice claim. Accordingly, Count One of the SAC will be dismissed as to Defendant Gary for failure to state a claim.

### b.  <u>Defendants' Performance at Summary Judgment</u>

In Counts Two through Six of the SAC, Esposito claims that Defendants Gary and Chestnut committed legal malpractice in opposing the <u>Isaac</u> defendants' motion for summary judgment.  (SAC (Dkt. No. 92) ¶¶ 72-96)  According to Esposito, Defendants committed legal malpractice when they failed to (1) cite the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Laws (the "NYCHRL") in their opposition to the <u>Isaac</u> defendants' summary judgment motion; (2) offer evidence that Gladstein was the managing partner of Gladstein & Isaac; (3) offer evidence that Gladstein knew that Isaac was a sexual predator; (4) file a non-frivolous opposition to the motion for summary judgment; and (5) file a meritorious motion to reargue.  (<u>Id.</u>)

According to Esposito, Defendants Gary and Chestnut should have argued that the Gladstein & Isaac law firm is a "public accommodation" under the NYSHRL and the NYCHRL and is therefore prohibited "from discriminating against their customers or clients based on gender and other prohibited classifications."  (<u>Id.</u> ¶ 36)  Because Gladstein & Isaac is a public accommodation, the NYSHRL and the NYCHRL imposed "a duty [on Gladstein] to protect Ms.

Esposito from . . . sexual assault [by Gladstein's partner, Isaac]." (Id. ¶ 41) And "as a managing partner [of Gladstein & Isaac] with supervisory authority [over Isaac]," Gladstein had a duty to protect Esposito from sexual assault by Isaac. (Id.) Finally, Esposito claims that "Gladstein's knowledge that Isaac had a history of sexual[ ] harassment" imposed a duty on Gladstein to protect her from Issac's sexual assault. (Id.)

Defendant Gary responds that the NYSHRL and the NYCHRL have no application to Esposito's claims in Esposito v. Isaac, and that Judge Cohen properly ruled that Gladstein had no supervisory authority over Isaac. (Gary Br. (Dkt. No. 108) at 23-30)

Judge Wang recommends that – to the extent that Esposito's legal malpractice claims are predicated on Defendants' performance in opposing the Isaac defendants' summary judgment motion – those claims should be dismissed, because "there are no facts pleaded in the SAC to support a reasonable inference that [Judge] Cohen would have considered an unpleaded claim at summary judgment and ruled differently, or even that he was unaware of the provisions of the Human Rights Laws that applied to clients of law firms, or that a motion to amend to add this claim in 2013, when Defendants began their representation, would not have been denied as untimely." (2024 R&R (Dkt. No. 272) at 15 (emphases in original)) This Court agrees with Judge Wang's analysis.

As an initial matter, by the time Defendants Gary and Chestnut took over representation of Esposito in the Isaac case in August 2013, Esposito's claims had been pending for five years, and her case was at summary judgment. (SAC (Dkt. No. 92) at ¶¶ 18-20, 22) Defendants played no role in drafting Esposito's complaint, and Esposito does not fault Defendants for failing to amend the complaint to include claims under the NYSHRL and NYCHRL. Esposito instead asserts that Defendants should have raised claims under these

statutes – for the first time – at summary judgment.  But because Esposito's pleadings in <u>Isaac</u> never asserted claims under the NYSHRL and the NYCHRL, Defendants could not have properly raised these claims at summary judgment.

As New York's Supreme Court, Appellate Term, explained in 2017 – in affirming Judge Cohen's decision granting the remaining <u>Isaac</u> defendants summary judgment – Esposito "never pleaded any claims under the Human Rights Laws, never alleged that the law firm is a 'public accommodation,' and did not move to amend the complaint to assert such claims." <u>Esposito v. Isaac</u>, 54 Misc. 3d 134(A) (N.Y. Sup. Ct. App. Term 2017).  As a result, the Appellate Term "decline[d] to entertain [Esposito's] attempt to assert for the first time the unpleaded claim that defendant law firm is a 'public accommodation' and therefore liable under the New York State and City Human Rights Laws." <u>Id.</u>

As discussed above, "[t]o establish the elements of proximate cause and actual damages for a claim of legal malpractice, the plaintiff must show that 'but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome.'" <u>Stonewell Corp</u>, 678 F. Supp. 2d at 209 (quoting <u>Zarin</u>, 184 A.D.2d at 387).  Moreover, "'[s]peculative contentions about what might have happened had the defendant attorney . . . taken a different approach in litigating a case on behalf of the plaintiff [are] not sufficient to support the plaintiff's allegations of legal malpractice.'" <u>Terracciano</u>, 2017 WL 2297013, at *5 (quoting <u>Citidress II Corp.</u>, 105 A.d.3d at 798).  Here, Esposito cannot demonstrate that – but for Defendant Gary's alleged negligence in failing to raise arguments under the NYSHRL and the NYCHRL – she would have defeated the <u>Isaac</u> defendants' summary judgment motion.  As is apparent from the Appellate Term's decision, any claim or argument asserted under the NYSHRL and the NYCHRL at summary judgment would have been rejected as a result of

Esposito's failure to plead claims under these statutes. Accordingly, Defendant Gary's failure to assert claims or arguments under these statutes at summary judgment – or in the subsequent motion to reargue – does not constitute legal malpractice.

Esposito also contends that Defendants committed legal malpractice by failing to offer evidence that Gladstein (1) was managing partner of Gladstein & Isaac; and (2) knew that Isaac was a sexual predator. According to Esposito, "under New York partnership law, a partner who assumes management or supervisory responsibilities has a duty to protect clients from sexual assaults by rogue partners," and "a partner has a duty to protect firm clients from partners known to have a history of sexual harassment." (SAC (Dkt. No. 92) ¶¶ 4-5; see id. ¶ 37) Esposito argues that – but for Defendants' failure to offer evidence that Gladstein was the managing partner of Gladstein & Isaac, and was aware of Isaac's history of sexual harassment – "the Civil Court would have denied the [Isaac] [d]efendants' motion for summary judgment, [and] the case would have proceeded to trial where Ms. Esposito would have obtained a judgment of at least $25 million." (Id. at ¶¶ 79, 84)

But Esposito's argument that Gladstein had supervisory responsibility over Isaac was considered and rejected by Judge Cohen:

> Despite his partnership with Isaac, Gladstein was not in a supervisory role to Isaac and did not have a duty to supervise his co-equal. Isaac was not an employee and was not subservient to Gladstein in any way. The Court finds no statute or case law that imposes a duty on Gladstein to supervise his equal partner Isaac. The fact that Gladstein and Isaac had a business relationship did not in and of itself, impose any duty to supervise Isaac.

(Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 6-7) Esposito does not address Judge Cohen's ruling that Gladstein had no legal obligation to supervise Isaac. Instead, she focuses on Judge Cohen's statement that "no statute imposes a duty to protect plaintiff in this type of matter," and argues that the NYSHRL and the NYCHRL apply.

As explained above, however, the NYSHRL and the NYCHRL could not have been raised at summary judgment, because Esposito's pleadings raised no claims under these statutes.

And while Judge Cohen does not mention that Gladstein was managing partner of Gladstein & Isaac, that fact was before him: Defendants' supplemental memorandum of law in opposition to the motion for summary judgment states that "Harvey Gladstein, Esq. was the managing partner of Gladstein and Isaac, and as such, he had actual and or constructive knowledge of his business partners propensities to sexually harass the female members of his staff." (Esposito v. Isaac, No. 502-TSN2008, Def. Supp. Sum. J. Br. (Dkt. No. 92-7) at 11) In sum, Esposito has not pled facts that plausibly demonstrate that the Isaac defendants' summary judgment motion would have been denied if Defendants had submitted additional information concerning Gladstein's status as managing partner or awareness of Isaac's history of sexual harassment.

The Court concludes that the SAC's Counts One through Six do not state a claim for legal malpractice.

### 2.    Negligent Misrepresentation

Count Seven of the SAC alleges negligent misrepresentation arising out of Defendants' "unilateral rejection of [the] $750,000 settlement offer" at the mediation. (SAC (Dkt. No. 92) ¶¶ 97-106) In connection with this claim, Esposito complains that "[t]he information Gary and Chestnut imparted to [her] at the October 28, 2014 mediation, including their representation that 'there was no chance' that the [Isaac] [d]efendants' motion for summary judgment would be granted, was incorrect." (Id. ¶ 100) Esposito further alleges that Defendants "should have known that the [Isaac] [d]efendants' motion for summary judgment would probably be granted since the motion was fully briefed and Gary and Chestnut had failed to raise

28

a single valid defense to that motion." (Id. ¶ 101)  And but for Defendants' alleged

misrepresentation, Esposito "would have accepted the $750,000 offer."  (Id. ¶ 104)

Defendant Gary argues that Esposito's allegation that there was a $750,000

settlement offer is contradicted by documentary evidence, and that Count Seven is duplicative of

Count One.  (Gary Br. (Dkt. No. 108) at 20-21)

"Under New York law, the elements for a negligent misrepresentation claim are

that (1) the defendant had a duty, as a result of a special relationship, to give correct information;

(2) the defendant made a false representation that he or she should have known was incorrect; (3)

the information supplied in the representation was known by the defendant to be desired by the

plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment." Hydro Invs., Inc. v. Trafalgar Power

Inc., 227 F.3d 8, 20 (2d Cir. 2000).  "However, the alleged misrepresentation must be factual in

nature and not promissory or relating to future events that might never come to fruition."  Id.

(collecting cases); see also Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987) ("Promises

of future conduct are not actionable as negligent misrepresentations.").  Moreover, "[u]nder New

York law, where claims of . . . negligent misrepresentation . . . are premised on the same facts

and seek identical relief as a claim for legal malpractice, those claims are duplicative and must

be dismissed." Joyce v. Thompson Wigdor & Gilly LLP, 06 Civ. 15315 (RLC) (GWG), 2008

WL 2329227, at *14 (S.D.N.Y. June 3, 2008); see also Serova v. Teplen, 05 Civ. 6748 (HB),

2006 WL 349624, at *4 (S.D.N.Y. Feb. 16, 2006) ("Claims for . . . negligent misrepresentation

that are based on the same factual allegations as a legal malpractice claim and do not allege

distinct damages are . . . duplicative of that cause of action.").

Judge Wang finds that

> Plaintiff's complained-of "misrepresentation" relates to Defendants' assertions that Plaintiff would not lose the pending summary judgment motion or that she would likely recover more at a later settlement or at trial. (ECF 92 ¶ 8, 27-29). These statements relate to future events and cannot be the basis of a negligent misrepresentation claim. Accordingly, I recommend that Plaintiff's negligent misrepresentation claim also be <u>DISMISSED</u>.

(2024 R&R (Dkt. No. 272) at 16 (emphasis in original))

Esposito's negligent misrepresentation claim is premised on the same facts and seeks the same relief as her legal malpractice claim. Indeed, in the SAC's prayer for relief, Esposito demands judgment "on the First and Seventh Claims for Relief" in the form of "an award of compensatory damages of $750 million plus pre-judgment interest." (SAC (Dkt. No. 92) at 29) As discussed above, the SAC's Count One is for legal malpractice arising out of Defendants' alleged rejection of the settlement offer at the mediation. And the factual basis for the negligent misrepresentation claim – rejection of the settlement offer and the loss of the summary judgment motion – is the same as the factual basis for Counts One through Six alleging legal malpractice. Given these circumstances, "Plaintiff's cause of action for negligent misrepresentation, as it relates to the actions of Defendants . . . as attorneys, must . . . be dismissed as duplicative of Plaintiff's claim for legal malpractice." <u>Hua Xue v. Jensen</u>, 19 Civ. 1761 (VSB), 2020 WL 6825676, at *12 (S.D.N.Y. Nov. 19, 2020)

Even if Esposito's negligent misrepresentation claim were not duplicative of her legal malpractice claims, Judge Wang is correct that the alleged misrepresentation is not "factual in nature" and cannot form the basis for a negligent misrepresentation claim. <u>Hydro Invs., Inc.</u>, 227 F.3d 8, 20. "[C]ourts guard against a party's 'efforts to frame broken promises into misrepresentations of present fact.'" <u>Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.</u>, 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (quoting <u>Murray v. Xerox Corp.</u>, 811 F.2d 118, 123-24 (2d Cir. 1987)). Defendants' alleged predictions regarding the outcome of the pending

summary judgment motion "cannot support a claim for negligent misrepresentation because they are promissory representations about future events." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004). Accordingly, Esposito's claim for negligent misrepresentation will be dismissed as to Defendant Gary.

**CONCLUSION**

As discussed above, Judge Wang's 2024 R&R (Dkt. No. 272) recommends that the Second Amended Complaint be dismissed as to both Defendants for failure to state a claim. Only Defendant Gary moved to dismiss the SAC, however. Accordingly, Judge Wang's R&R is adopted as to Defendant Gary and not adopted as to Defendant Chestnut, and the SAC's claims against Defendant Gary are dismissed for failure to state a claim. Given the analysis in this Order, however, **Plaintiff is directed to show cause by October 24, 2024, why her claims against Chestnut in the SAC should not likewise be dismissed.**

The Clerk of Court is directed to terminate the motion (Dkt. No. 107), to terminate Gary as a defendant, and to mail a copy of this Order to pro se Plaintiff.

Dated: New York, New York
       September 24, 2024

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge