UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUISA CASTAGNA ESPOSITO,

                           Plaintiff,

        - against -

WILLIE GARY, individually and as a
partner of GARY, WILLIAMS, PARENTI,
WATSON & GARY, P.L.L.C. and
CHISTOPHER CHESTNUT, individually
and as a partner of THE CHESTNUT FIRM,
P.C. and THE CHESTNUT FIRM, LLC,

                        Defendants.

**MEMORANDUM
OPINION & ORDER**

18 Civ. 11245 (PGG) (OTW)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Luisa Castagna Esposito has sued Defendant Willie Gary and his

law firm – Gary, Williams, Parenti, Watson & Gary, P.L.L.C. (the "Gary Defendants") – and

Defendant Christopher Chestnut and his law firms – the Chestnut Firm, P.C. and the Chestnut

Firm, LLC (the "Chestnut Defendants"). Gary and Chestnut represented Esposito in an assault

and battery case that she had brought against Allen Isaac and other lawyers who had represented

her in a personal injury automobile accident case in New York state court. (Second Am. Cmplt.

("SAC") (Dkt. No. 92) ¶¶ 1-2, 18)

        Esposito claimed that – while representing her in the personal injury case – Isaac

had "repeatedly demanded 'blow jobs' as a condition of his representation." "When Ms.

Esposito refused, Isaac physically assaulted her, forcibly touched intimate parts of her body, and

repeated his demands for sex." (Id. ¶ 18) In August 2015, after seven years of litigation, the

defendants in Esposito v. Isaac were granted summary judgment and Esposito's claims were

dismissed.  (See Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9))

In the instant case – which Esposito commenced on December 3, 2018 (Dkt. No. 1) – Esposito claims that the Gary Defendants and the Chestnut Defendants committed legal malpractice while representing her in Esposito v. Isaac.  On March 25, 2019, then Chief Judge McMahon granted Esposito's request to proceed in forma pauperis ("IFP").  (Dkt. No. 4)  On June 20, 2019, the case was assigned to this Court.  (See Dkt. Sheet at June 20, 2019)

The Second Amended Complaint was filed on April 15, 2022, and asserts claims for legal malpractice and negligent misrepresentation.  (SAC (Dkt. No. 92) ¶¶ 60-106)

On April 29, 2022, the Gary Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) arguing, inter alia, that the SAC fails to state a claim.  (Gary Mot. (Dkt. No. 107))

On May 6, 2022, this Court referred the Gary Defendants' motion to Magistrate Judge Ona T. Wang for a Report and Recommendation ("R&R").  (Dkt. No. 115)  On February 5, 2024, Judge Wang issued an R&R recommending that the SAC be dismissed as to all defendants for failure to state a claim.  (Feb. 5, 2024 R&R (Dkt. No. 272))  Plaintiff Esposito submitted objections to the R&R on February 16, 2024.  (Pltf. Obj. (Dkt. No. 274))

On September 24, 2024, this Court adopted Judge Wang's R&R as to the Gary Defendants, and dismissed the SAC's claims as to the Gary Defendants for failure to state a claim.  (Sept. 24, 2024 Order (Dkt. No. 280))  While the analysis in this Court's September 24, 2024 Order dismissing the claims as to the Gary Defendants applies with equal force to Plaintiff's claims against the Chestnut Defendants, the Chestnut Defendants had not moved to dismiss.  Accordingly, this Court did not dismiss the SAC's claims against the Chestnut Defendants, but instead directed Plaintiff "to show cause . . . why her claims against [the]

Chestnut [Defendants] in the SAC should not likewise be dismissed." (Id. at 31)[1] (emphasis

omitted)

On October 9, 2024, Plaintiff filed a declaration arguing that her claims against

the Chestnut Defendants in the SAC should not be dismissed. (Pltf. Decl. (Dkt. No. 282))

For the reasons stated below, Plaintiff's claims against the Chestnut Defendants in

the SAC will be dismissed for failure to state a claim.

## BACKGROUND[2]

### I.    FACTS

#### A.    Esposito's Allegations Against Isaac

In 2005, Esposito retained Pollack, Pollack, Isaac & Decicco, LLP to represent

her in a lawsuit arising out of injuries that she suffered in a 2002 automobile accident. (Feb. 5,

2024 R&R (Dkt. No. 272) at 2; Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ.

Ct. Order (Dkt. No. 92-9) at 2)[3]

> As that case neared trial, a partner at Pollack, Brian Isaac, put Plaintiff in contact
> with his father, Allen H. Isaac ("Isaac"), [a partner at Gladstein & Isaac, LLP,] to
> work as trial counsel. [(ECF 24-5 at 3)] While preparing for trial, Plaintiff met
> with Isaac several times in 2005. Id. She alleges that Isaac harassed and sexually
> assaulted her during two meetings in his office. (ECF 8 ¶¶ 17-23). Although
> Plaintiff made multiple reports to law enforcement and regulatory and oversight
> bodies about Isaac's sexual assault and harassment, and filed multiple state and
> federal lawsuits against him and his firm, Isaac was never arrested or criminally
> prosecuted. See 2020 R&R at 2.

---

[1]  Page number citations reflect the pagination generated by this District's Electronic Case Files
("ECF") system.
[2]  Familiarity with this Court's September 24, 2024 Order is assumed. (See Sept. 24, 2024 Order
(Dkt. No. 280))
[3]  The Court takes judicial notice of prior state court decisions and filings. See Johnson v. Pugh,
11 Civ. 385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial
notice of matters of public record, including pleadings, testimony, and decisions in prior state
court adjudications, on a motion pursuant to Rule 12(b)(6)." (citing Rothman v. Gregor, 220 F.3d
81, 92 (2d Cir. 2000)).

(Feb. 5, 2024 R&R (Dkt. No. 272) at 2)[4]

      **B.**     **Esposito's First Amended Complaint**

      Esposito filed the First Amended Complaint ("FAC") in the instant action on May 8, 2019, alleging legal malpractice claims against Gary, Chestnut, and their law firms. In the FAC, she makes the following allegations:

      On December 26, 2008, Esposito filed a "sexual assault and battery" lawsuit in New York County Civil Court. (FAC (Dkt. No. 8) ¶ 1; Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 2) In that lawsuit, Esposito named as defendants Isaac, his law firm Gladstein & Isaac, Harvey Gladstein – Isaac's partner – and lawyers at the Pollack firm who had referred her to Isaac. (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 1-3)

      Esposito's claims against Isaac were dismissed in 2009 for lack of proper service. (Id. at 2; Esposito v. Isaac, 68 A.D.3d 483 (1st Dept. 2009) (affirming order dismissing Esposito's claims against Isaac)) At some point not specified in the record, Esposito's claims against the lawyers at the Pollack firm were dismissed because of her failure to respond to discovery demands and to obey discovery-related court orders. (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9) at 2)

      In August 2013, Esposito retained Defendants Gary and Chestnut, and another lawyer – Andrew Maloney – to represent her in the Isaac case. (FAC (Dkt. No. 8) ¶ 30) Gary was the lead lawyer, while Chestnut and Maloney served as his "minions." (Id. ¶ 47) According to Esposito, Gary displayed "bravado" and made "promises about getting success" in her case.

---

[4] (See Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y. Civ. Ct. Order (Dkt. No. 92-9) at 1 (explaining that "Allen Isaac ('Isaac') and Harvey Gladstein ('Gladstein') were both general partners in a law firm known as Gladstein and Isaac.")).

(Id. ¶ 41)  Gary told Esposito that he planned to hold a press conference and to create a video

about her case to attract press coverage, and would pressure the remaining defendants to settle.

(See id. ¶¶ 44-46)  While Gary created a video, he never made it public, and he never held a

press conference.  (Id. ¶¶ 45-46)  In October 2013, Gary and Chestnut made a $25 million

demand in Esposito v. Isaac on Esposito's behalf.  (Id. ¶ 56)

    In 2013, the remaining defendants in the Isaac case – Gladstein & Isaac and

Isaac's partner Gladstein – moved for summary judgment.  (See id. ¶ 49)  According to Esposito

– in opposing that motion – Gary and Chestnut "failed to perform ordinary reasonable practice

standards," did not find "case law to support their arguments," and failed to "submit crucial

evidence in their opposition papers."  (See id. ¶¶ 49-50)

    On August 11, 2015, Judge David Cohen of the New York County Civil Court

granted defendants' motion for summary judgment, and Esposito's remaining claims in the Isaac

case were dismissed.  (Esposito v. Isaac, No. 502-TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct.

Order (Dkt. No. 92-9))  Judge Cohen concluded that Isaac's alleged misconduct could not be

attributed to Gladstein & Isaac, and that Isaac's partner Gladstein had no duty to supervise Isaac,

and therefore could not be held liable for Isaac's misconduct.  (Id. at 4-9)[5]

    Esposito goes on to allege that "[o]ver the summer months and continuing into the

Fall of 2015" she "came to the realization that Gary was trying to completely derail and bury her

case."  (FAC (Dkt. No. 8) ¶ 51)  During this time, Gary and Chestnut did not "return[] her phone

calls or answer[] her emails."  (See id.)  They "conjur[ed] up all kinds of stories and excuses for

---

[5]  In the FAC, and without explanation, Esposito asserts that Gary and Chestnut "settled" the
Isaac case "without her knowledge or permission."  (FAC (Dkt. No. 8) ¶ 55)  As discussed
above, there was no settlement:  Esposito's claims were dismissed as to certain defendants, and
Judge Cohen granted the remaining defendants summary judgment.  (Esposito v. Isaac, No. 502-
TSN2008, Aug. 11, 2015 N.Y.C. Civ. Ct. Order (Dkt. No. 92-9))

a long string of incidents in mishandling her cases," "fabricat[ed] meetings," "involv[ed] her in

staged mediation meetings," and "refus[ed] to actually demand or prepare for a jury trial." (Id.)

According to Esposito, Gary and Chestnut's "actions and inactions" amount to "legal

malpractice and outright fraud." (Id.)

On September 23, 2015, Maloney moved to reargue Judge Cohen's summary

judgment decision. (Esposito v. Isaac Mot. Reargue (Dkt. No. 51)) On October 15, 2015,

Maloney appeared for a hearing concerning this motion. According to Esposito, he "handled

himself in a manner that screams for his disbarment." (FAC (Dkt. No. 8) ¶ 54)

In a December 28, 2015 email, attorney Edward Griffith notified Defendants Gary

and Chestnut, and Maloney, that Esposito had retained him to represent her, and asked them to

complete a "substitution of counsel" form. (Pltf. Opp. (Dkt. No. 45) at 4-5) In a January 7, 2016

email to Judge Cohen's law secretary, Maloney submitted copies of the motion to reargue papers

and "a Consent to Change Attorney Form executed by . . . Esposito with the name and address of

her new attorneys." (Id. at 6; Pltf. Opp. to Def. Obj. (Dkt. No. 57) at 3) Maloney copied Gary

and Chestnut on his email. (Pltf. Opp. (Dkt. No. 45) at 5-6)

Based on these factual allegations, the FAC asserts the following causes of action:

> Count One . . . alleges breach of contract because Defendants allegedly did not
> provide her with "proper legal representation"; Count Two alleges in conclusory
> terms that Defendants breached their fiduciary duties of good faith, loyalty, and
> due care; Count Three alleges negligence; Count Four alleges legal malpractice
> and makes unspecific and general allegations that Defendants denied Plaintiff her
> constitutional rights; Count Five alleges that Defendants were dishonest and
> incompetent because they falsely informed Plaintiff that Isaac had been dismissed
> from the [Isaac case]; and Count Six alleges "grand larceny conspiracy to defraud
> [Plaintiff]." (ECF 8 ¶¶ 64-79)

(April 20, 2020 R&R (Dkt. No. 49) at 15)

C.    **Dismissal of the First Amended Complaint and Appeal**

Gary, Chestnut, and their law firms moved to dismiss the FAC arguing, inter alia, that Plaintiff's claims are time-barred and that the FAC fails to state a claim. In an April 20, 2020 R&R, Judge Wang recommended that Defendants' motion to dismiss be granted, with leave to amend. (April 20, 2020 R&R (Dkt. No. 49))

Judge Wang rejected Defendants' argument that Plaintiff's claims are time-barred, finding that "there appear[ed] to be a factual dispute" as to whether the "continuous representation doctrine" applied. (Id. at 11-15)

Judge Wang concluded, however, that Counts One, Two, and Three of the FAC "amount to allegations of malpractice by Defendants," and should be dismissed as duplicative of the legal malpractice claim in Count Four. (Id. at 16) As to Count Four, Judge Wang found that Plaintiff "fails to plead facts demonstrating malpractice, proximate cause, or damages." Accordingly, Judge Wang recommended that Defendants' motion to dismiss Count Four be granted. (Id. at 17-21) Finally, as to Counts Five and Six – which "sound in fraud" (id. at 16, 22) – Judge Wang recommended dismissal, finding that Esposito had not pled fraud with particularity, as required by Fed. R. Civ. P. 9(b). (Id. at 22-23)

Judge Wang further recommended that Esposito be given "one last chance at amendment," given her pro se status. (Id. at 2, 24)

In a May 16, 2020 order, this Court adopted the R&R in part. (May 16, 2020 Dismissal Order (Dkt. No. 61)) This Court concluded that all six counts in the FAC "sound in legal malpractice," that the continuous representation doctrine did not apply, and that all of Plaintiff's claims were time-barred under the applicable three-year statute of limitations. (Id. at 19-24) This Court further concluded that even if Plaintiff's legal malpractice claims had been

timely, "Judge Wang did not err in concluding that Esposito fails to state a claim for legal malpractice." (Id. at 24)  Because Esposito's claims were time-barred, this Court concluded that "granting leave to amend would be futile." (Id. at 25)

Esposito appealed, and in an April 20, 2021 summary order the Second Circuit reversed, stating that it "disagree[d] with the district court's application of the statute of limitations to the allegations of the complaint." Esposito v. Gary, 844 F. App'x 448, 450 (2d Cir. 2021).  Noting that Esposito had filed her action on December 3, 2018, the Second Circuit stated that "[t]he record is devoid of any indication . . . that Esposito [had] communicated a loss of trust and confidence to her attorneys before December 28, 2015, when she sent a letter terminating their engagement." Id. at 449.  The court further noted that "[i]f the statute is tolled past December 3, 2015" – three years before the instant action was brought – "then Esposito's claims are not time-barred." Id. at 450.  The Second Circuit "remand[ed] to allow consideration of whether Esposito's proposed Second Amended Complaint states valid legal malpractice claims such that leave to amend should be granted." Id.

Following the remand, on June 11, 2021, Esposito moved for leave to amend. (Mot. Amend (Dkt. No. 80))  Judge Wang granted that motion on March 31, 2022.  (Mar. 31, 2022 Leave to Amend Order (Dkt. No. 91))

**D.    Second Amended Complaint**

The SAC was filed on April 15, 2022.  (SAC (Dkt. No. 92))

Judge Wang summarized the SAC's factual allegations as follows:

The SAC . . . raises generally the same claims [as those asserted in the FAC].  It describes for the first time, [however,] allegations that Defendants rejected a $750,000 settlement offer at the October 2014 JAMS mediation "without consulting" Plaintiff and otherwise prevented Plaintiff from speaking at the mediation, and [contains] allegations that Defendants committed malpractice by losing at summary judgment.  (SAC ¶ 8).  Apparently to support "but for"

causation for Plaintiff's legal malpractice claims, Plaintiff attaches 16 exhibits, including the parties' summary judgment briefing in the 2008 [automobile accident case] and various complaints against Defendants Gary and Chestnut concerning their conduct in other, unrelated cases. (ECF 92-1-16).

In support of Plaintiff's assertion that the complaint [in the instant case] was timely, Plaintiff attaches, for the first time, a copy of an email from Plaintiff to Defendants dated December 28, 2015, in which Plaintiff apparently terminated the Defendants. (See ECF 92-11, Exhibit K). In her prior filings, Plaintiff had only provided an email in which she had agreed to retain Griffith and other correspondence with him to suggest that since Defendants had never terminated her, the attorney-client relationship continued until she had retained Griffith.

(Feb. 5, 2024 R&R (Dkt. No. 272) at 4-5)

Accordingly, Plaintiff Esposito's new allegations in the SAC are that Defendants Gary, Chestnut, and their law firms (1) unilaterally rejected a settlement offer at an October 2014 mediation, which forms the basis for the legal malpractice and negligent misrepresentation claims set forth in Counts One and Seven of the SAC; and (2) made a series of incorrect decisions in opposing defendants' motion for summary judgment in Esposito v. Isaac, which forms the basis for the legal malpractice claims set forth in Counts Two through Six of the SAC.

With respect to the settlement offer, the SAC alleges that "a mediation was scheduled for October 28, 2014" in Esposito v. Isaac. (SAC (Dkt. No. 92) ¶ 27) During the mediation, the mediator "announced that the insurer had offered $750,000 but it would not consider settlement at any higher amount. Without consulting Ms. Esposito, Gary rejected the offer, increased Ms. Esposito's demand back to $25 million, and concluded the mediation." (Id. ¶ 30) Defendants "told Ms. Esposito that the $750,000 offer was a 'joke' because Ms. Esposito would recover millions of dollars, either from a settlement shortly before trial or from an even higher jury verdict after trial." (Id. ¶ 31) "Ms. Esposito was concerned about the rejection of the $750,000 settlement but she didn't express those concerns to Gary and Chestnut." (Id. ¶ 32)

Based on Defendants' "[u]nilateral rejection of [the] $750,000 settlement offer," Esposito asserts

claims for legal malpractice and negligent misrepresentation.  (Id. at 20, 27)

   As for Defendants' performance in opposing the remaining Isaac defendants'

summary judgment motion, the SAC alleges that the Isaac defendants filed their motion on May

30, 2014.  (Id. ¶ 34)  Gladstein & Isaac and Isaac's partner Gladstein argued that "[u]nder New

York law, a partnership and individual non-wrongdoing partners may only be liable for the

wrongful acts of [a] partner[] if the acts were committed (1) within the ordinary course of the

partnership's business or (2) with the authority of the copartners, i.e. the partnership authorized

the acts."  (Id. ¶ 35)

   According to the SAC, the Isaac defendants' motion had no merit, because

> a rogue partner's wrongful acts constitute gender or race discrimination prohibited
> under New York State and City Human Rights statutes.  These laws prohibit
> businesses that are "public accommodations," including businesses organized as
> partnerships, from discriminating against their customers or clients based on
> gender and other prohibited classifications.  See, e.g., N.Y. Executive Law, §
> 296(2)(a); NYC Admin. Code § 8-107(4)(a).  Thus, the partnership and Gladstein,
> as its managing partner, had a duty to protect their clients from sexual assault and
> other forms of sexual discrimination by partners . . . . In addition, Gladstein's duty
> to protect Ms. Esposito from Isaac's sexual harassment and assault arose from
> two other independent sources.  First, Gladstein testified that he was the firm's
> managing partner with supervisory authority over Isaac.  Second[,] evidence
> indicated that Gladstein was aware that Isaac was a sexual predator.

(Id. ¶ 36-37)

   According to the SAC, "Gary and Chestnut did [not] oppose the [Isaac]

[d]efendants' motion for summary judgment with any of these effective defenses."  (Id. ¶ 38)

And "[o]n August 11, 2015, Judge Cohen issued his decision granting the motion for summary

judgment and dismissing Ms. Esposito's claims against the [remaining Isaac] [d]efendants."  (Id.

¶ 46)  Although a motion to reargue was filed, Gary and Chestnut merely "rehashe[d] prior

arguments, which Judge Cohen properly rejected."  (Id. ¶ 48)  On January 11, 2016, Judge

Cohen denied the motion to reargue.  (Id.)

       In sum, the SAC alleges that – in opposing the Isaac defendants' summary

judgment motion – Defendants committed legal malpractice by (1) "fail[ing] to raise the New

York State and City Human Rights Laws"; (2) "fail[ing] to submit evidence that Gladstein was

managing partner"; (3) "fail[ing] to submit evidence that Gladstein knew that Isaac was a sexual

predator"; (4) filing a "frivolous opposition to the motion for summary judgment"; and (5)

"fail[ing] to file a meritorious motion to reargue."  (Id. at 22-26)

### E.    Judge Wang's R&R Concerning the Gary Defendants' Motion to Dismiss the Second Amended Complaint

       On April 29, 2022, the Gary Defendants moved to dismiss the SAC under Fed. R.

Civ. P. 12(b)(6).  (Gary Mot. (Dkt. No. 107))  The Gary Defendants argued that the SAC should

be dismissed because (1) it fails to state a claim (Gary Br. (Dkt. No. 108) at 7); (2) the SAC's

claims are "clearly contradicted by documentary evidence" (id. at 19); (3) the SAC "'raises a

new legal theory that would require the gathering and analysis of facts not already considered by

the Defendant'" and therefore causes undue prejudice (id. at 30 (quoting Laber v. Harvey, 438

F.3d 404 (4th Cir. 2006)); and (4) the claims are time-barred.  (Id. at 30-31)

       On May 6, 2022, this Court referred the Gary Defendants' motion to Judge Wang

for an R&R.  (Dkt. No. 115)

       On November 14, 2022, Esposito's attorneys moved to withdraw.  (Pltf. Atty.

Mot. (Dkt. No. 142))  Judge Wang granted that motion on January 18, 2023.  (Jan. 18, 2023

Order (Dkt. No. 153))  Esposito entered a pro se appearance on January 19, 2023.  (Dkt. No.

155)

On February 3, 2023, the Chestnut Defendants' attorneys moved to withdraw. (Def. Chestnut Atty. Mot. (Dkt. No. 160))  Judge Wang directed Chestnut to respond to the withdrawal motion.  (Dkt. No. 163)  Defendant Chestnut entered a pro se appearance on March 5, 2023.  (Dkt. No. 164)  On April 13, 2023, Defendant Chestnut filed an Answer to the SAC. (Chestnut Answer (Dkt. No. 167))

In a February 5, 2024 R&R, Judge Wang recommended that the SAC be dismissed as to all defendants for failure to state a claim.  (Feb. 5, 2024 R&R (Dkt. No. 272))

As to Counts One through Six of the SAC – which allege legal malpractice – Judge Wang explained that a plaintiff asserting such a claim under New York law must allege: "'(1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client.'"  (Id. at 8 (quoting Bryant v. Silverman, 284 F.Supp.3d 458, 470 (S.D.N.Y. 2018))  Judge Wang noted that "[t]he specific instances of alleged malpractice now arise from two events:  (1) the JAMS mediation, and (2) the loss at summary judgment."  (Id. at 9)

As to Count One – legal malpractice arising out of the JAMS mediation session – Judge Wang noted that, "[a]ccording to Plaintiff's version of events in the SAC, Plaintiff knew at the mediation that a settlement offer had been made, and that Defendants had explained why they had rejected it."  (Id. at 11 (citing SAC (Dkt. No. 92) ¶¶ 30-32) (emphasis in original)) "Defendants did not 'fail to communicate' a $750,000 settlement offer (if one was actually made); rather, Plaintiff 'acquiesced' in the decision or accepted their advice not to take it, and now, seeks to find them liable for pressuring her to ratify their rejection of the offer."  (Id. at 11-12)  "[L]awyers 'are not guarantors of a favorable outcome in litigation,' [however,] and their reasonable strategic decisions made in the course of representing a client do not amount to

malpractice." (Id. at 10 (quoting Iannazzo v. Day Pitney LLP, 04 Civ. 7413 (DC), 2007 WL 2020052, at *6 (S.D.N.Y. July 10, 2007)) As such, Esposito's claims regarding Defendants' conduct at the mediation "cannot support a claim for malpractice, as it falls squarely in the province of reasonable strategic decisions," and even if "a lawyer or their client may have misjudged their chances on a dispositive motion or at settlement[, such a miscalculation] cannot give rise to a claim of legal malpractice in hindsight." (Id. at 12)

As to Counts Two through Six – which allege legal malpractice arising out of Plaintiff's loss at summary judgment – Judge Wang found that Esposito "still fails to plead 'but for' causation and actual damages." (Id.) "'To plead the element of proximate cause, a plaintiff must allege that but for the attorney's negligence, she would have prevailed in the underlying matter or would not have sustained any ascertainable damages.'" (Id. (quoting Silverman, 284 F. Supp. 3d at 474)

While acknowledging that Esposito "asserts that the Defendants committed legal malpractice in 'fail[ing] to raise New York State and City Human Rights Laws as a basis [for] holding [Gladstein & Isaac LLP and Gladstein] liable for Isaac's sexual assault'" (id. at 13 (quoting Pltf. Opp. (Dkt. No. 119) at 18)), Judge Wang concludes that "Plaintiff's claim is too speculative and conclusory to plead 'but for' causation and damages." (Id. at 14-15) "[T]here are no facts pleaded in the SAC to support a reasonable inference that Justice Cohen would have considered an unpleaded claim at summary judgment and ruled differently, or even that he was unaware of the provisions of the Human Rights Laws that applied to clients of law firms, or that a motion to amend to add this claim in 2013, when Defendants began their representation, would not have been denied as untimely." (Id. at 15 (emphasis in original)) And "given that Plaintiff's state court complaint did not contain a claim under the Human Rights Laws at the time

Defendants began their representation [of Plaintiff], Defendants' strategy not to rely on an unpleaded claim at summary judgment 'does not fall below "that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community."'" (Id. (quoting Iannazzo, 2007 WL 2020052, at *10))

Having concluded that the SAC "fails to plead facts demonstrating malpractice, proximate cause, or damages," Judge Wang "recommend[ed] that" this Court grant "Defendants' motions to dismiss all of Plaintiff's legal malpractice claims, Counts One through Six." (Id.)

As to Count Seven of the SAC – which alleges negligent misrepresentation – Judge Wang found that this claim should likewise be dismissed for failure to state a claim. (Id. at 16)

Judge Wang explained that "'[u]nder New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" (Id. (quoting Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000)) "'[T]he alleged misrepresentation must be factual in nature[, however,] and not promissory or relating to future events that might never come to fruition.'" (Id. (quoting Hydro Investors, Inc., 227 F.3d at 20-21))

Judge Wang found that "Plaintiff's complained-of 'misrepresentation' relates to Defendants' assertions [to her at the mediation] that Plaintiff would not lose the pending summary judgment motion or that she would likely recover more at a later settlement or at trial."

(Id.)  Because "[t]hese statements relate to future events and cannot be the basis of a negligent misrepresentation claim," Judge Wang recommended that Plaintiff's negligent misrepresentation claim also be dismissed.  (Id.)

### F.    Plaintiff's Objections and this Court's Adoption of the R&R

Plaintiff Esposito submitted objections to the R&R on February 16, 2024.  (Pltf. Obj. (Dkt. No. 274))  In objecting to the R&R, Esposito contended that Judge Wang erred in (1) stating that Plaintiff's claims may be time-barred (id. at 4-8); and (2) recommending dismissal of the SAC despite previously granting Plaintiff leave to file the SAC.  (Id. at 8-17)[6]

In a September 24, 2024 Order, this Court overruled Plaintiff's objections, adopted Judge Wang's R&R as to the Gary Defendants, and dismissed the SAC's claims as to the Gary Defendants for failure to state a claim.  (Sept. 24, 2024 Order (Dkt. No. 280))

As to Plaintiff's objection "to Judge Wang's statement that 'Plaintiff's claims may be time barred,'" this Court explained that "Judge Wang made no finding that Plaintiff's claims were time-barred, and her recommendation that the SAC be dismissed turns on her determination that the SAC fails to state a claim."  (Id. at 18 (citing Pltf. Obj. (Dkt. No. 274) at 4-8; Feb. 5, 2024 R&R (Dkt. No. 272) at 7))  Accordingly, this Court overruled Plaintiff's first objection.  (Id.)

As to Plaintiff's objection to "Judge Wang's recommendation that the SAC be dismissed for failure to state a claim," this Court noted that "Esposito relie[d] almost exclusively on the 'law of the case' doctrine."  (Id. (citing Pltf. Obj. (Dkt. No. 274) 8-17))  Plaintiff argued

---

[6] Esposito also objected to certain of Judge Wang's discovery rulings.  (See, e.g., Pltf. Obj. (Dkt. No. 274) at 13 ("Plaintiff objects specifically as Magistrate Wang repeatedly failed to [o]rder the disclosure of Plaintiff's full files from former counsel in accordance with NY State law and Disciplinary code and such materials are likely to yield further information and evidence to support an additional amendment of the complaint."))  Plaintiff's objections regarding Judge Wang's discovery rulings have no bearing on whether the SAC pleads a claim, however.

that because "Judge Wang granted her leave to file the SAC," "this Court is bound by that determination under the 'law of the case doctrine,'" as "a motion for leave to amend is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss." (Id. (citing Pltf. Obj. (Dkt. No. 274) 8-17)) This Court explained, however, that under Second Circuit law application of the law of the case doctrine is discretionary. Accordingly, "Judge Wang's decision granting Plaintiff leave to file the SAC does not prevent this Court from considering whether the SAC states a claim." (Id. at 18-19 (citing, inter alia, Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001)) This Court went on to overrule Plaintiff's second objection and to consider "whether the SAC adequately pleads claims for legal malpractice and negligent misrepresentation." (Id. at 19)

As to Count One of the SAC, this Court agreed with Judge Wang that it should be dismissed for failure to state a claim, because the SAC's allegations demonstrated that Esposito had acquiesced in Defendants' rejection of the October 2014 settlement offer. While the SAC expresses dissatisfaction with Defendants' strategic choices, such dissatisfaction does not provide a basis for a legal malpractice claim. (Id. at 21-24)

This Court also agreed that Counts Two through Six of the SAC should be dismissed, because Esposito had not pled facts demonstrating that – but for Defendants' alleged negligence in failing to raise certain arguments or offer certain evidence at summary judgment – the Isaac defendants' summary judgment motion would have been denied. (Id. at 24-28)

And this Court likewise concluded that Count Seven of the SAC fails, because it is duplicative of Esposito's legal malpractice claims. Count Seven is premised on the same facts and seeks the same relief as the SAC's legal malpractice claims. Moreover, the alleged misrepresentation – that the Isaac defendants' summary judgment motion would be denied and

that Plaintiff would recover more than $750,000 in a later settlement or at trial – was not factual in nature. (Id. at 28-31)

Although this Court's analysis in the September 24, 2024 Order applied with equal force to the SAC's claims against the Chestnut Defendants, the Court did not dismiss Plaintiff's claims against the Chestnut Defendants, because they had not moved to dismiss the SAC. The Court instead directed Plaintiff to "show cause by October 24, 2024, why her claims against [the] Chestnut [Defendants] in the SAC should not likewise be dismissed." (Id. at 31) (emphasis omitted)

In an October 3, 2024 letter, Plaintiff seeks permission to file an interlocutory appeal to the Second Circuit concerning this Court's September 24, 2024 Order dismissing her claims against the Gary Defendants. (Dkt. No. 281)

In an October 9, 2024 declaration, Plaintiff argues that the SAC's claims against Defendant Chestnut should not be dismissed because (1) he waived any argument that the SAC is deficient; and (2) this Court erred in dismissing her claims against Defendant Gary. (Pltf. Decl. (Dkt. No. 282))

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

Where a plaintiff is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); see also Williams v. Rosenblatt Sec., Inc., No. 14 CIV. 4390 JGK, 2014 WL 3765757, at *1 (S.D.N.Y. July 30, 2014) ("The Court has the authority to screen sua sponte an [in forma pauperis] complaint at any time and must dismiss the complaint, or portion thereof, that . . . fails to state a claim upon which relief may be granted . . . .").

## II.    ANALYSIS

### A.    Plaintiff's Arguments as to Why the SAC's Claims Against Defendant Chestnut Should Not be Dismissed

In arguing that the SAC's claims against Defendant Chestnut should not be dismissed, Esposito contends that

(1) "Defendant Chestnut never opposed the Motion For Leave To Amend the SAC."

(2) "Defendant Chestnut waived his arguments that the SAC failed to state valid claims. (Defendant Gary also waived his arguments as well)."

(3) "Defendants Gary & Chestnut never asserted that the SAC failed to state valid legal malpractice claims, either in Gary's opposition to the Rule 59/60 motion in response to Plaintiff's Letter Motion seeking leave to file the updated SAC. On the contrary, that response was limited to complaining that Plaintiff should not be allowed to update the version of the SAC annexed to her Rule 59/60 motion. (See letter

18

response [ECF 76]. Ironically, Gary dropped that argument. Thus, Gary & Chestnut waived those arguments. Updated SAC [ECF 81-1]."

(4) "Defendant Christopher Chestnut never moved before this Court to be dismissed from the complaint. Defendant Chestnut filed an answer with affirmative defenses . . . ."

(5) "By Verified sworn statement the Affirmative defenses and Answer of Defendant Chestnut show a Settlement occurred that has been denied to Plaintiff and raises the need for Discovery. This alone presents issues which should deny dismissal of Chestnut as a Defendant."

(6) "The law of the case should also deny dismissal of Defendant Chestnut and Plaintiff has already filed for permission to seek an interlocutory Appeal of the Dismissal of Defendant Gary which Plaintiff asserts was improper and a manifest error of both fact and law and should serve as further basis for Defendant Chestnut to remain in the case and leave for reconsideration of the improper dismissal of Defendant Gary."

(Pltf. Decl. (Dkt. No. 282) at 2-3)

As discussed above, where – as here – a plaintiff is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); see also Williams, 2014 WL 3765757, at *1 ("The Court has the authority to screen sua sponte an [in forma pauperis] complaint at any time and must dismiss the complaint, or portion thereof, that . . . fails to state a claim upon which relief may be granted . . . ."). Accordingly, Esposito's first four arguments – which are premised on Defendant Chestnut's waiver – are not persuasive, because this Court may consider sua sponte whether a complaint filed in forma pauperis fails to state a claim. And, as discussed in detail in the September 24, 2024 Order, this Court has already concluded that the SAC does not state a claim as to any defendant. (See Sept. 24, 2024 Order (Dkt. No. 280))

Esposito's argument that she has sought "permission to [file] an interlocutory [a]ppeal" concerning this Court's dismissal of her claims against the Gary Defendants (see Pltf. Decl. (Dkt. No. 282) at 3) provides no basis for this Court to permit her claims against the

19

Chestnut Defendants to continue.  "'Interlocutory appeals are strongly disfavored in federal practice,'" and "'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  Belya v. Kapral, No. 20 CIV. 6597(VM), 2021 WL 2809604, at *2 (S.D.N.Y. July 6, 2021) (quoting In re Ambac Fin. Grp., Inc. Sec. Litig., 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) and then In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 529-30 (S.D.N.Y. 2014)).  There are no such "exceptional circumstances" here.

      As to Esposito's argument that "a Settlement occurred that has been denied to Plaintiff and raises the need for Discovery" (Pltf. Decl. (Dkt. No. 282) at 3), Count One of the SAC alleges that the Gary and Chestnut Defendants committed legal malpractice "by unilaterally rejecting the $750,000 settlement offer made at the October 28, 2014 mediation without consulting Ms. Esposito."  (SAC (Dkt. No. 92) ¶ 68)  As the Court explained in the September 24, 2024 Order and reiterated above,

> while Esposito contends that Defendants unilaterally rejected the settlement offer, she acknowledges [in the SAC] that she was aware of the offer.  Indeed, she states that she had concerns about rejecting the offer, but never expressed those concerns to Defendants. (SAC (Dkt. No. 92) ¶¶ 32-33)  The SAC's allegations thus demonstrate that Esposito acquiesced in Defendants' rejection of the offer.  She now regrets accepting their advice, saying that "[b]ut for the incorrect information imparted by Gary and Chestnut, [she] would have accepted the $750,000 offer."  (Id. ¶ 104)

(Sept. 24, 2024 Order (Dkt. No. 280) at 23)  As explained above, however, Esposito's dissatisfaction with Defendants' strategic choices does not provide a basis for a legal malpractice claim.  (Id. at 23-24)

      As to Esposito's contention that "[t]he law of the case should also deny dismissal of Defendant Chestnut" (Pltf. Decl. (Dkt. No. 282) at 3), the law of the case doctrine has no application here.

In the September 24, 2024 Order, this Court summarized the law of the case

doctrine as follows:

> "The doctrine of the law of the case posits that if a court decides a rule of
> law, that decision should continue to govern in subsequent stages of the
> same case." Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir.
> 2001); accord Novick v. AXA Network, LLC, 714 Fed. App'x 22, 25 (2d
> Cir. 2017). "Courts apply the law of the case doctrine when their prior
> decisions in an ongoing case either expressly resolved an issue or
> necessarily resolved it by implication." Aramony, 254 F.3d at 410; accord
> In re Terrestar Corp., 16 Civ. 1421, 2017 WL 1040448, at *4 (S.D.N.Y.
> Mar. 16, 2017). "Although not binding, the doctrine 'counsels a court
> against revisiting its prior rulings in subsequent stages of the same case
> absent cogent and compelling reasons such as an intervening change of
> controlling law, the availability of new evidence, or the need to correct a
> clear error or prevent manifest injustice.'" Starbucks Corp. v. Wolfe's
> Borough Coffee, Inc., 736 F.3d 198, 208 (2d Cir. 2013) (quoting Ali v.
> Mukasey, 529 F.3d 478, 490 (2d Cir. 2008)); accord Reches v. Morgan
> Stanley & Co. LLC, 736 Fed. App'x 306, 307 (2d Cir. 2018) (summary
> order). "The doctrine is properly applied only when the parties had a full
> and fair opportunity to litigate the initial determination." Hamlen v.
> Gateway Energy Servs. Corp., No. 16 Civ. 3526, 2018 WL 1568761, at *1
> (S.D.N.Y. Mar. 29, 2018) (citing Westerbeke Corp. v. Daihatsu Motor
> Co., 304 F.3d 200, 219 (2d Cir. 2002)). The law of the case doctrine is
> "driven by considerations of fairness to the parties, judicial economy, and
> the societal interest in finality." United States v. Carr, 557 F.3d 93, 102
> (2d Cir. 2009); accord Tomasino v. Estee Lauder Companies, Inc., No. 13
> Civ. 4692, 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015).
>
> Chan Ah Wah v. HSBC N. Am. Holdings Inc., 15 Civ. 8974 (LGS), 2019 WL 859042, at
> *4 (S.D.N.Y. Feb. 22, 2019).
>
> The Second Circuit has emphasized that "[a]pplication of the law of the case doctrine is
> discretionary and does not limit a court's power to reconsider its own decisions prior to
> final judgment." Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001)
> (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 165 n. 5 (2d Cir. 2000)).
> Moreover, "[t]he law of the case doctrine allows departure from a prior decision if a court
> is convinced that it was incorrect." Pinyuk v. CBE Grp., Inc., 561 F. Supp. 3d 334, 339
> (E.D.N.Y. 2021).

(Sept. 24, 2024 Order (Dkt. No. 280) at 18-19)

As discussed above, this Court declined to dismiss the SAC's claims against the

Chestnut Defendants in the September 24, 2024 Order because the Chestnut Defendants had not

moved to dismiss.  Although the reasons justifying the dismissal of Plaintiff's claims against the Gary Defendants apply with equal force to the Chestnut Defendants, the Court decided to give Esposito an opportunity to show cause why her claims against the Chestnut Defendants should not likewise be dismissed.  The September 24, 2024 Order does not contain any finding or ruling that Plaintiff's claims against the Chestnut Defendants are sufficient, however.  Accordingly, the law of the case doctrine has no application here.

For all these reasons, Plaintiff's claims against the Chestnut Defendants will be dismissed.

**B.    Leave to Amend**

In her response to this Court's show cause order, Plaintiff contends that she "should be allowed leave to amend her Third Amended Complaint to cure any defects."  (Pltf. Decl. (Dkt. No. 282) at 4)[7]

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint."  Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  Leave to amend "is within the discretion of the District Court," however, and may be denied for reasons "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); see also De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir. 1996) (holding that it is appropriate to deny leave to amend "when a party has been given ample prior

---

[7]  The operative complaint is currently the SAC.  Although Plaintiff submitted a Third Amended Complaint, Judge Wang did not grant leave for it to be filed, given the pending motion to dismiss the SAC.  (Sept. 8, 2023 Order (Dkt. No. 213))

opportunity to allege a claim") (citing <u>Armstrong v. McAlpin</u>, 699 F.2d 79, 93-94 (2d Cir. 1983); <u>Luce v. Edelstein</u>, 802 F.2d 49, 56 (2d Cir. 1986)); <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

In requesting leave to amend, Plaintiff does not substantively address the fact that she has already filed three complaints in this action, none of which has pled a claim.  Nor has Plaintiff explained why her pleading has remained deficient even after the deficiencies in prior pleadings were explained to her.

Both Judge Wang and this Court explained the deficiencies in the First Amended Complaint to Plaintiff before Judge Wang granted Plaintiff leave to file the SAC.  (<u>See</u> April 20, 2020 R&R (Dkt. No. 49) (recommending that FAC be dismissed for failure to state a claim, but that Plaintiff be granted leave to amend to cure the identified deficiencies); May 16, 2020 Dismissal Order (Dkt. No. 61) (dismissing the FAC after explaining pleading deficiencies); Mar. 31, 2022 Leave to Amend Order (Dkt. No. 91))

"The fact that leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), does not mean that leave to re-plead is to be granted in perpetuity."  <u>Arnold v. KPMG LLP</u>, 543 F. Supp. 2d 230, 238 (S.D.N.Y. 2008), <u>aff'd</u>, 334 F. App'x 349 (2d Cir. 2009). Granting Plaintiff leave to amend yet again is "unlikely to be productive," because Plaintiff has failed to cure pleading deficiencies, despite explanations from Judge Wang and this Court as to the nature of those pleading deficiencies.  "'[P]leading [an adequate complaint] is not . . . an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges.'"  <u>CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz</u>, No. 14-CV-6566 (RJS), 2019 WL 8165893, at *5 (S.D.N.Y. Oct. 9, 2019), <u>aff'd</u>,

830 F. App'x 330 (2d Cir. 2020) (quoting <u>In re Refco Capital Mkts., Ltd. Brokerage Customer</u>
<u>Sec. Litig.</u>, No. 06-cv-643 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008), <u>aff'd</u> <u>sub</u>
<u>nom</u>. <u>Capital Mgmt. Select Fund Ltd. v. Bennett</u>, 680 F.3d 214 (2d Cir. 2012)).

      And the deficient pleadings here cannot be entirely explained by Plaintiff's <u>pro</u> <u>se</u>
status.  While Plaintiff filed the Complaint and the First Amended Complaint <u>pro</u> <u>se</u>, she
obtained legal counsel on June 19, 2020 (<u>see</u> Jun. 19, 2020 Notice of Appearance (Dkt. No. 66)),
and was represented by counsel when she filed the SAC on April 15, 2022.  (SAC (Dkt. No. 92))
She continued to be represented by counsel in the instant action until January 18, 2023, when her
lawyer's motion to withdraw was granted.  (<u>See</u> Jan. 18, 2023 Order (Dkt. No. 153))

      Although Plaintiff had legal representation when the SAC was filed, the SAC
contains many of the same deficiencies previously identified in Judge Wang's – and this Court's
– analysis of the FAC.  For example, despite Judge Wang's warning that Plaintiff needed to
plead facts in the SAC "[e]xplain[ing] why 'but for' the alleged actions of Defendants, she would
have prevailed on her [state court] case" (April 20, 2020 R&R (Dkt. No. 49) at 24), the SAC
does not plead facts showing that – but for Defendants' alleged legal malpractice – the <u>Isaac</u>
defendants' summary judgment motion would have been denied.  (<u>See</u> Sept. 24, 2024 Order
(Dkt. No. 280) at 24-28)  And while this Court dismissed the FAC's negligence claim as
duplicative of Plaintiff's legal malpractice claims – noting that "[c]ourts routinely dismiss as
duplicative . . . negligence claims where those claims arise out of the same facts and seek the
same relief as legal malpractice claims" (May 16, 2020 Dismissal Order (Dkt. No. 61) at 18
(citing <u>England v. Feldman</u>, No. 11 Civ. 1396 (CM), 2011 WL 1239775, at *5 (S.D.N.Y. Mar.
28, 2011) and <u>Joyce v. Thompson Wigdor & Gilly, LLP</u>, No. 06 Civ. 15315, 2008 WL 2329227
(S.D.N.Y. June 3, 2008)) – the SAC again pleads a negligence claim premised on the same facts

and seeking the same relief as the SAC's legal malpractice claims.  (See Sept. 24, 2024 Order

(Dkt. No. 280) at 28-30)

Given this history, it is obvious that granting "'leave to amend would be futile[,]

because plaintiff has already had [three] bites at the apple and they have proven fruitless.'"

Harris v. Westchester Cty. Med. Ctr., No. 08 Civ. 1128, 2011 WL 2637429, at *4 (S.D.N.Y. July

6, 2011) (quoting Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *12

(S.D.N.Y. Aug. 30, 2005)); see also Krulewich v. Covidien, LP, 498 F. Supp. 3d 566, 584-85

(S.D.N.Y. 2020) (denying leave to amend second amended complaint where the court had

"already dismissed the plaintiffs' First Amended Complaint . . . . [and] explained why the

plaintiffs' pleading was defective, [but] plaintiffs failed to cure the defects"); Phila. Indem. Ins.

Co. v. Lennox Indus., Inc., No. 3:18-CV-00217 (CSH), 2020 WL 705263, at *9 (D. Conn. Feb.

12, 2020) (denying leave to amend where plaintiff "had ample opportunity to cure the

deficiencies of its . . . claims following the [court's prior] [r]uling, which thoroughly explained

why these claims were inadequately stated," but plaintiff "fail[ed] to comply with the careful

guidance" of the prior ruling).

Plaintiff's contradictory assertions in the SAC also demonstrate that leave to

amend should be denied.  In the SAC, Plaintiff pleads both that (1) Defendants unilaterally

rejected a settlement offer at the October 2014 mediation; and (2) that she was aware of the

settlement offer and acquiesced in Defendants' rejection of that offer.  (SAC (Dkt. No. 92) ¶¶ 32-

33, 68, 103-04)  Whether Defendants unilaterally rejected a settlement offer at the October 2014

mediation is central to Counts One and Seven of the SAC.  Plaintiff's contradictory assertions

concerning this alleged incident further suggest that leave to amend should be denied.  Green v.

Covidien LP, No. 18 CIV. 2939 (PGG), 2021 WL 1198833, at *15 (S.D.N.Y. Mar. 30, 2021) ("Plaintiff's contradictory pleadings provide further reason to deny leave to amend.").

Allowing Plaintiff to amend after three prior unsuccessful efforts to plead a claim would also cause undue prejudice to Defendants. As discussed above, Plaintiff has been given an ample opportunity to cure the deficiencies in her pleadings since she filed this lawsuit more than six years ago. "[F]urther leave to amend would cause undue prejudice to the defendant[s] because it would force [Defendants] to continue litigating a claim for which the plaintiff[] ha[s] no legal basis." Krulewich, 498 F. Supp. 3d at 584-85; see also United States ex rel. Hussain v. CDM Smith, Inc., No. 14-CV-9107 (JPO), 2018 WL 11217206, at *2 (S.D.N.Y. Jan. 31, 2018) ("In considering prejudice to the Defendants, 'the Court also notes that allowing [Relator] to amend his complaint a third time would further delay the disposition of a case that has been pending for over [three] years.'") (quoting McKethan v. N.Y. State Dep't of Corr. Servs., No. 10 CIV. 3826 PAE, 2012 WL 2333415, at *2 (S.D.N.Y. June 19, 2012)) (alterations in Hussain). "Put simply, the Court will not indulge Plaintiff's attempts at piecemeal pleading, whereby Plaintiff hopes to eventually cobble together an adequate complaint under the Court's guidance while inflicting significant prejudice on Defendants." CVR Energy, 2019 WL 8165893, at *5.

Finally, while Plaintiff – in responding to the Court's show cause order – seeks leave to amend and to file a Third Amended Complaint, Plaintiff has not explained how the defects identified in the SAC will be cured in a Third Amended Complaint. For the reasons explained above, there is no reason to believe that the defects seen in Plaintiff's three prior complaints would be cured in a Third Amended Complaint.

Accordingly, leave to amend the SAC is denied.

## CONCLUSION

For the reasons stated above, the SAC's claims against the Chestnut Defendants are dismissed for failure to state a claim. Given that the Chestnut Defendants are the last remaining Defendants, the SAC is dismissed in its entirety. Plaintiff's motion for permission to file an interlocutory appeal with the Second Circuit (Dkt. No. 281) is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 281) and to mail a copy of this Order to pro se Plaintiff.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

Dated: New York, New York
      June 26, 2025

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge